UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JENNIFER PEARSON,**<br><br>Plaintiff,<br><br>v.<br><br>**NANCY A. BERRYHILL, Acting Commissioner of Social Security,**<br><br>Defendant. | Civ. No. 17-6211 (KM)<br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

Jennifer Pearson was found disabled as of February 1, 2004, and she thereafter received Title II disability insurance benefits ("DIB"). *See* 42 U.S.C. § 423. Some seven years later, however, the Administration ruled that she was no longer disabled as of March 1, 2011, and remained non-disabled through her date last insured, September 30, 2011. She brings this action pursuant to 42 U.S.C. § 405(g) to review that decision.

For the reasons set forth below, the final decision of the Commissioner is reversed and remanded in order to ensure that the diabetes listing under which the claimant was found disabled, although subsequently repealed, was nevertheless considered in the continuation-of-benefits analysis.

### I. ORIGINAL FINDING OF DISABILITY AND SUBSEQUENT HISTORY

On May 23, 2005, Ms. Pearson was found disabled as of February 1, 2004. Her condition, diabetes mellitus, was found to satisfy the criteria of a listed impairment, Listing 9.08B. (R 83)[1] She had been hospitalized several

---

[1] "R __" refers to pages in the administrative record, filed in this case as DE 6.

1

times in late 2004 and early 2005 for diabetic ketoacidosis, staph endocarditis, and acute cellulitis. (R 108, 249, 261–447)

Thereafter, her treatment regimen included monthly doctor visits and administration of insulin. (R 456–554) As of July 2010, she had not experienced diabetic ketoacidosis "in recent years." (R 458) Her diabetes was not adequately controlled, although her failure to count carbohydrates or use an insulin pump may have been partly to blame. (R 458)

Ms. Pearson completed a Continuing Disability Review Report in November 2010 and a Function Report in January 2011. (R 175–94) These disclosed that she had difficulty with strenuous activity and heavy lifting. She reported that she was able to care for her daily needs, perform light housework, shop, attend church, and spend time with her boyfriend. (R 185–91)

On March 4, 2011, a consultative exam produced normal physical and neurological findings. At the exam, Ms. Pearson reported working as a receptionist. (R 249–50) Yvonne Li, M.D., a state agency consultant, reviewed the record and concluded that Ms. Pearson could perform a range of light work. (R 253–60)

On March 24, 2011, the SSA issued an initial determination that Ms. Pearson's condition had improved, and that as of March 1, 2011, she was no longer entitled to disability benefits. (R 84, 87–87) She requested reconsideration. In December 2011, a state agency consultant, Howard Goldbas, M.D., reviewed the updated medical record and concluded that Ms. Pearson could perform a range of light work despite her diabetes. (R 555–62) The SSA denied reconsideration. (R 85, 112–14)

That denial was upheld by an Administrative Law Judge ("ALJ") and the Appeals Council in decisions, summarized below, that are the subject of this appeal.

## II. DECISIONS OF THE ALJ AND APPEALS COUNCIL

### A. The Eight-Step Sequential Analysis

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). A claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). In a decision dated May 23, 2005, Ms. Pearson was found to satisfy that standard. *See supra.* The issue now before the court is whether the Administration later correctly found that her medical condition had improved, and her disability had ended.

Because the framework for determining whether a claimant already receiving benefits continues to be disabled is somewhat unfamiliar, I review it at the outset. It incorporates much of the familiar five-step sequential analysis for an initial disability application, but adds some intermediate steps specifically directed to the issue of whether there has been a medical improvement, making eight steps in all. *See* 20 C.F.R. § 404.1594(f). Those steps are as follows:

> (1) Are you engaging in substantial gainful activity? If you are (and any applicable trial work period has been completed), we will find disability to have ended (see paragraph (d)(5) of this section).

> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.

> (3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)

> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b) (1) through (4) of this section; i.e., whether or not there

has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment made under paragraph (f)(7) of this section and your age, education, and past work experience (see paragraph (f)(9) of this section for an exception to this rule). If you can, we will find that your

disability has ended. If you cannot, we will find that your disability continues.

20 CFR § 404.1594(f)(1)–(8).

### B. The Commissioner's Decision Denying Disability

On February 5, 2015, the claimant, Ms. Pearson, who was represented by counsel, had a hearing before ALJ Theresa Merrill. (The transcript is at R 39–81.) At the hearing, the ALJ took testimony from Ms. Pearson as well as Dr. Pat Green, a vocational expert ("VE").

On April 24, 2015, ALJ Merrill filed her decision finding that the claimant, Ms. Pearson, was no longer disabled. (R 20–30). Her findings, corresponding to the eight-step process outlined above, were as follows:

The comparison point decision ("CPD") from which any medical improvement would be measured was the SSA's decision awarding disability benefits on May 23, 2005. (R 21 ¶ 1) At that time, the claimant was found to have diabetes mellitus, an impairment that met or equaled the severity of a listed impairment, then-current section 9.08 (now repealed). (R 22 ¶ 2)

From the date of that decision through March 1, 2011, the claimant performed no substantial gainful activity, as defined. (R 22 ¶ 3)

As of March 1, 2011, the claimant had the following medically determinable impairments, which met the threshold of severity: diabetes mellitus with neuropathy; history of retinopathy; lumbar radiculopathy; lumbar disc space narrowing; irritable bowel syndrome; anxiety disorder; and history of polysubstance abuse disorder. (R 22 ¶ 4) The claimant's complaints of chest pain and a kidney condition were not found to be severe; the ALJ noted that echocardiogram and ultrasound showed no significant findings; kidney protein leakage was controlled with medication and yearly monitoring. (*Id.*)

Since March 1, 2011, the claimant's impairments, alone or in combination, did not meet or equal the severity of a listed impairment. The ALJ's opinion states that she consulted listings 1.00 (musculoskeletal system), 2.00 (special senses and speech), 9.00 (endocrine disorders), and 12.00 (mental

5

disorders), as well as publication SSR 14-2 (Evaluating Diabetes Mellitus). Here, the ALJ noted a general lack of any medical evidence or opinion equating the claimant's impairments to any listing. Virtually all of the discussion at this step was devoted to the mental-disorder criteria of listing 12.00. (R 22–24 ¶ 5)

As of March 1, 2011, there had been a decrease in the medical severity of the claimant's impairments. The ALJ noted mild neuropathy, but with no end organ damage or ketoacidosis. There were complaints of fluctuating blood sugar and blackouts of up to two hours, but only two emergency room visits (in March 2013 and April 2014), both leading to discharge the same day. (R 24 ¶ 6) The current impairments, however, continue to meet the minimal threshold of severity. (R 24 ¶ 8)

The ALJ assessed Ms. Pearson's current impairments and found that they did not deprive her of the ability to work. (R 24 ¶ 7) She noted that the listing under which Ms. Pearson had been found disabled, Listing 9.08, had subsequently been repealed.

The ALJ found that Ms. Pearson possessed the following residual functional capacity (RFC):

> Based on the impairments present as of March 1, 2011, the claimant had the residual functional capacity to perform less than the full range of light work. She can lift/carry up to 20 pounds occasionally and up to 10 pounds frequently. During an eight-hour workday, she can sit for up to six hours and stand/walk for up to six hours. She can never climb ladders/ropes/scaffolds but can frequently climb ramps/stair, balance, kneel, crouch, and crawl. She can occasionally stoop. She is able to perform work that does not involve an assembly line pace. She should avoid concentrated exposure to hazards such as moving machinery and unprotected heights. She is able to occasionally operate foot controls with the right lower extremity. She is able to occasionally operate a motor vehicle. She would be absent one time per month due to ailments. Due to lapses in concentration and focus, she would be limited to understanding, remembering, and carrying out simple instructions. She would be off-task 5% of the day due to ailments.

(R 24–25 ¶ 9)

It was at this step that the ALJ performed her most sustained analysis of the medical evidence. (R 25–28). She properly considered (a) whether there was a medically determinable impairment that could be expected to produce the symptoms, and (b) the extent to which such symptoms, evaluated in light of the medical and other evidence, would limit work activities. The ALJ conducted a thorough review of the testimonial and medical evidence (discussed further below), and stated her reasons for giving greater or lesser weight to various portions. She accepted that the claimant's impairments placed limitations on her activities, which are reflected in the RFC. She concluded, however, that the current severity was not as great as claimed, and was not disabling.

The ALJ acknowledged that the claimant could not perform past relevant work as a receptionist or teacher's aide. (R 28 ¶ 10) In assessing her ability to work, the ALJ took into account that the claimant was a younger individual (born 10/16/1981), had a high school education, and could communicate in English. (R 28 ¶¶ 11,12)

Ultimately, the ALJ concluded that as of March 1, 2011, Ms. Pearson, given her age, education, work experience, and RFC, could perform jobs that exist in significant numbers in the national economy. This amounted to a capacity for light unskilled work, with significant limitations. Based on the VE testimony, the ALJ found that the claimant could perform the following representative occupations: assembler of small products (DOT 739.687-030; 230,000 positions), ticket seller (DOT 211.467-030; 600,000 positions), or hand packager (DOT 559.687-074; 365,000 positions). (R 29 ¶ 14)

Overall, then, the ALJ concluded that Ms. Pearson's disability ended as of March 1, 2011. (R 29 ¶ 15)

Ms. Pearson obtained review by the Appeals Council, which filed a written opinion on April 27, 2017. (R 6–10) The Appeals Council agreed with the ALJ's conclusion that the disability ended on March 1, 2011. It ruled, however, that the ALJ should have continued the analysis through Ms.

7

Pearson's date last insured, September 30, 2011.[2] It therefore accepted additional medical evidence from the claimant. (*See* R 162.) The Appeals Council reviewed that additional evidence, which included blood tests, an echocardiogram report, treatment notes from Dr. Ibrahim, a lumbar MRI, a neurological exam by Dr. Knep, prescriptions for diabetes medication, an eye exam, a gastrointestinal evaluation in connection with complaints of constipation, and two emergency room visits for back pain after lifting a five-gallon paint bucket. (R 11, 35–38, 740–85)

The Appeals Council found no reason to depart from the ALJ's findings, which it adopted and extended. It found that Ms. Pearson was not disabled as of March 1, 2011, and continuing through the date last insured, September 30, 2011. That constituted the final decision of the Commissioner. (R 3–11)

### C. Standard of Review

Final decisions of the Commissioner are reviewable by a district court. *See* 42 U.S.C. § 405(g).

As to legal issues, this Court's review is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to the factual findings of the Administrative Law Judges, however, this Court is directed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).

Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *accord Richardson v. Perales*, 402 U.S. 389, 401 (1971).

> [I]n evaluating whether substantial evidence supports the ALJ's findings . . . leniency should be shown in establishing the

---

[2] The Appeals Council decision states that the claimant "was born on October 16, 1981 and was 20 years old as of September 30, 2011...." Because the Appeals Council correctly stated Ms. Pearson's date of birth, I take this to be a mere typographical error for "29 years old." Either way, as found by the ALJ, she was assessed as a younger individual, aged 18–49. *See* R 28 (citing 20 C.F.R. § 404.1563)).

8

claimant's disability, and . . . the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)).

## III. DISCUSSION

### A. Necessity of Considering Repealed Diabetes Listing 9.08 in the Continuation-of-Benefits Analysis

Equivalence to a listed impairment was the basis for the original 2005 finding of disability. The SSA found that Ms. Pearson's impairment, diabetes mellitus, then equaled or surpassed the criteria of Listing 9.08. Listing 9.08 has since been repealed, however.[3] It was replaced and superseded by Listing 9.00, which, through cross-references to other listings, directs that diabetes be assessed according to its effects on other body systems.

---

[3] Listing 9.08 was abolished in 2011, based on advances in medical science that had occurred since the last revision in 1985:

> We are revising the listings for endocrine disorders because medical science has made significant advances in detecting endocrine disorders at earlier stages and newer treatments have resulted in better management of these conditions since we last published final rules making comprehensive revisions to the endocrine listing in 1985. Consequently, most endocrine disorders do not reach listing-level severity because they do not become sufficiently severe or do not remain at a sufficient level of severity long enough to meet our 12-month duration requirement. . . . [W]e should no longer have listing in section 9.00 and 109.00 based on endocrine disorders alone.

*Revised Medical Criteria for Evaluating Endocrine Disorders*, 76 Fed. Reg. 19692 (Apr. 8, 2011). Listing 9.08 and other subsections following Listing 9.00 relating to endocrine disorders were repealed. *Id.*

9

A question therefore arises in the context of a continuation-of-benefits analysis: Should the court, post-repeal, consider Listing 9.08 in assessing whether a medical improvement relevant to the claimant's ability to work has occurred? In its comments accompanying the 2011 repeal, the SSA answered that question in the affirmative:

> When a person qualifies for disability benefits under a listing, ***we continue to use that same listing when we later determine if he or she is still disabled.*** See §§ 404.1594(c)(3)(i), 416.994(b)(2)(iv), and 416.994a(b)(2). ***This rule applies even if we have removed or changed the listing since we last found that the beneficiary was disabled.*** For this reason, we will not find that a beneficiary's disability has ended solely because we have removed the DM [diabetes mellitus] listings or any other endocrine disorder listing.

*Revised Medical Criteria for Evaluating Endocrine Disorders*, 76 Fed. Reg. 19693 (Comment) (Apr. 8, 2011) (emphasis added).

Although associated regulations do not as explicitly address the subject of the repealed Listing 9.08, the sense is similar:

> If medical improvement has occurred and the severity of the prior impairment(s) ***no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work.*** Appendix 1 of this subpart describes impairments which, if severe enough, affect a person's ability to work. If the appendix level of severity is met or equaled, the individual is deemed, in the absence of evidence to the contrary, to be unable to engage in substantial gainful activity. ***If there has been medical improvement to the degree that the requirement of the listing section is no longer met or equaled, then the medical improvement is related to your ability to work.*** We must, of course, also establish that you can currently engage in gainful activity before finding that your disability has ended.

20 C.F.R. § 404.1594(c)(3)(i); *see also* 20 C.F.R. § 416.994(b)(2)(iv).

At step two, the ALJ found that Ms. Pearson's current impairments were not presumptively disabling—*i.e.*, that they did not meet or equal the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404,

10

Subpart P, Appendix 1, Part A. In doing so, the ALJ evaluated Ms. Pearson's impairments in relation to the *current* listings. That current catchall endocrine listing, Listing 9.00, cross-references other listings and directs the reader to consider diabetes insofar as it affects other body systems. (*See* R22 ¶ 5 (citing Listings 1.00, 2.00, 9.00, 12.00, and SSR 14-2.).[4] For reasons not entirely clear, nearly all of the ALJ's discussion at this step was devoted to Listing 12.00, involving mental impairments (one of those cross-referenced by current Listing 9.00).

Steps three and four are directed to the core issue of whether there has been a medical improvement that is relevant to the claimant's ability to work:

---

[4] Thus diabetes is not considered *per se*. Instead, it is assessed in relation to its effects on other body systems, under the listings for those body systems. The ALJ, at step two, was clearly tracking the standard of Listing 9.00, particularly as further explicated in SSR 14-2:

*Evaluating the Effects of DM under Other Body Systems*

We next determine at step 3 whether the impairment(s) meets or medically equals a listing, which also considers the medical severity of your impairment(s). DM is not a listed impairment for adults. However, the effects of DM, either alone or in combination with another impairment(s), may meet or medically equal the criteria of a listing in an affected body system(s). [fn. omitted] Below are some examples of the effects of DM and the body systems under which we evaluate them:

- Amputation of an extremity, under the musculoskeletal system listings (1.00).
- Diabetic retinopathy, under the special senses and speech listings (2.00).
- Hypertension, cardiac arrhythmias, and heart failure, under the cardiovascular system listings (4.00).
- Gastroparesis and ischemic bowel disease (intestinal necrosis), under the digestive system listings (5.00).
- Diabetic nephropathy, under the genitourinary impairments listings (6.00).
- Slow-healing bacterial and fungal infections, under the skin disorders listings (8.00).
- Diabetic neuropathy, under the neurological listings (11.00).
- Cognitive impairments, depression, anxiety, and eating disorders, under the mental disorders listings (12.00).

11

> (3) . . . [H]as there been medical improvement as defined in paragraph (b)(1) of this section? . . . .
>
> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b) (1) through (4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).

20 C.F.R. § 1594(f) (quoted more fully at pp. 3–4, *supra*).

Under the regulations quoted above, the ALJ is required to use the "same listing" applied in the original disability determination—here, Listing 9.08—to determine whether the claimant is still disabled, and in particular whether the medical improvement relates to the claimant's ability to do work.

The ALJ's conclusion at this step, however, consists of a boilerplate conclusion of law followed by one sentence of analysis:

> **7. The medical improvement is related to the ability to work because, as of March 1, 2011, the claimant's CPD impairment(s) no longer met or medically equaled the same listing(s) that was met at the time of the CPD (20 CFR 404.1594(c)(3)(i))**
>
> Significantly, the listing under which the claimant was evaluated is now obsolete.

(R 24 ¶7)

Under the authorities cited above, it is not sufficient merely to note, as the ALJ did here, that the listing at the time of the initial finding of disability has been repealed. Despite repeal, it remains relevant to the analysis. That must particularly be so when, as here, the prior finding of disability was based on listing equivalence. Running through the regulations is a principle that the prior finding, including listing equivalence, must serve as a baseline for the determination of medical improvement.

12

## B. Appropriateness of Remand

The next question is that of remedy. This Court may affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007). Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

Neither outright reversal nor affirmance is appropriate here. The ALJ, at a later stage of the stage of the analysis, reviewed the current medical evidence in a manner that supports a bottom-line finding of no disability.

It might be possible, as the Administration implies, for the Court to extract the necessary facts from the remainder of the opinion and perform the necessary analysis on its own. In this somewhat unusual but surely recurring scenario, however, I think it is important to define the proper procedure and enforce adherence to it. It is for the ALJ in the first instance to make the necessary findings, strictly following the step-by-step approach prescribed by the regulations.

I will therefore remand the matter. In doing so, I neither state nor imply any view as to the merits of Ms. Pearson's claim, or whether the result should differ on remand.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **REVERSED AND REMANDED** for proceedings not inconsistent with this Opinion. An Order will be entered in accordance with this Opinion.

Dated: December 19, 2018

**Hon. Kevin McNulty**
**United States District Judge**